Greg Fustin, Plaintiff-Appellant, v. Board of Education of Community Unit District No. 2, a Municipal Corporation, Defendant-Appellee.

Gen. No. 68–45.

Fifth District.

November 20, 1968.

Elmer Jenkins, of Benton, for appellant.

J. C. Mitchell and W. A. Armstrong, of Marion, for appellee.

EBERSPACHER, P. J.

Plaintiff filed his complaint for damages alleging that the defendant Board of Education possessed, controlled, and managed a high school at Marion, and provided, managed, and controlled a basketball gymnasium for basketball games; that plaintiff was a member and player on the Benton Consolidated High School varsity basketball team and was participating in a basketball game between Marion and Benton, at Marion at the invitation of defendant, when a Marion player without provocation struck plaintiff in the face with his fist, causing plaintiff's injuries. The complaint further alleged that plaintiff was in the exercise of due care; that the game was controlled, managed, and supervised by defendant through its agents and charged the defendant with numerous acts or omissions of negligence in supervision of its offending player and the game, including failure to properly control and supervise such player with knowledge that such player did without provocation lose his temper and strike members of the opposing team, and that such person was a person likely to lose his temper and strike opposing participants, and failed to keep such player under control. The complaint also charged that defendant through its agents failed to maintain discipline of the players participating in an activity in violation of section 24–24 of the School Code (c 122, Ill Rev Stats 1965), the pertinent part of which is:

"Teachers and other certificated educational employees shall maintain discipline in the schools. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program and may be exercised at any time for the safety and supervision of

114

the pupils in the absence of their parents or guardians.

"Nothing in this Section affects the power of the board to establish rules with respect to discipline.

"The board may make and enforce reasonable rules of conduct and sportsmanship for athletic and extracurricular school events . . . :"

Defendant filed its motion to dismiss the complaint or in the alternative to strike the subparagraphs of the complaint which alleged the purported negligent acts and omissions of defendant. The motion was based on the 1965, Local Governmental Act (c 85, § 1–101 et seq., Ill Rev Stats 1965) and particularly section 3–108 of the Act, the pertinent part of which is:

"Except as otherwise provided by this Act . . . neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property."

In addition to contending that the complaint was substantially insufficient as a matter of law to allege a cause of action against the Defendant District 2, the motion contended that defendant was not liable under the doctrine of respondeat superior for the conduct of the offending player, and could not be charged with knowledge that he would commit any alleged crime or acts done without provocation or advance notice. The motion also contended that under section 2–201 those persons responsible for the supervision of the game, alleged to be defendant's employees or agents, are not liable to plaintiff. That section provides:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or

115

omission in determining policy when acting in the exercise of such discretion even though abused."

And defendant contended that thus, defendant was not liable, as a matter of law by virtue of section 2–109 of the Act, which provides:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."

The alternative motion was likewise based on sections 3–108, 2–201, and 2–109 of the Act, and the fact that the offending player was not the servant of defendant, and that defendant was not chargeable, nor as a matter of law, bound by duty to assume that any person would commit unprovoked acts of violence.

At the hearing on the motion, plaintiff took leave to amend his complaint by insertion of the following paragraph:

"1a. That the defendant has contracted for liability insurance to the extent prayed for in the prayer of plaintiff's complaint."

Leave to amend the complaint in that manner was granted, and the parties stipulated that defendant's motion should stand as the motion to dismiss and strike plaintiff's complaint as amended; thus for purposes of the motion the allegations of paragraph 1a of the complaint were admitted.

After hearing the motion the court ordered the complaint as amended dismissed and ordered judgment for defendant, from which order plaintiff has appealed.

In a recent decision of this Court, Woodman v. Litchfield Community School Dist. No. 12, — Ill App2d —, — NE2d —, we held that a complaint alleging injuries to a second grade student in the classroom resulting from improper supervision and enforcement of discipline by the teacher, was properly dismissed on motion, by reason

of the provisions of the School Code, supra, and the Local Governmental Employees Tort Immunity Act, supra. The language of that opinion is here applicable in so far as the original complaint in this case is concerned.[1] In the Woodman complaint there was no allegation of liability insurance on behalf of the District.

Plaintiff here contends that by the allegation of paragraph 1a, to the effect that the District had liability insurance to cover the occurrence, the defenses provided the District by the Tort Immunity Act were not available to defendant by virtue of section 9–103 of that Act which provides in part:

> "(a). A local public entity may contract for insurance against any loss or liability which may be imposed upon it under this Act. . . ."
>
> "(b). Every policy for insurance coverage issued to a local public entity shall provide or be endorsed to provide that the company issuing such policy waives any right to refuse payment or to deny liability thereto within the limits of said policy by reason of the non-liability of the insured public entity for the wrongful or negligent acts of itself or its employees and its immunity from suit by reason of the defenses and immunities provided in this Act."

We note first, that section 9–103 provides authority for a public entity to contract for insurance against "liability which may be imposed upon it under this Act." Here plaintiff has not alleged liability under the Tort Immunity Act but bases his alleged cause of action on common-law negligence and a violation of section 24–24 of the School Code. Neither does plaintiff's paragraph 1a allege that the insurance contracted for was contracted for

---

[1] Woodman v. Litchfield Community School District No. 12, — Ill App2d —, was pending in this Court at the time the briefs in the present case were filed.

117

pursuant to the authority of section 9–103 (a). Previous to the enactment of the Tort Immunity Act (approved Aug. 13, 1965), School Districts had, and still have authority to insure against liability of the board or its employees, resulting from negligent acts or omissions,[2] and to protect individual members of the board and its employees from liability by insurance from occurrences resulting in bodily injury while the individual was acting within the course or scope of his duties.[3] Such pro-

[2] Section 34–18 of the School Code provided: "The Board . . . shall have power:

". . .

"12. To insure against any loss or liability of the board or of any officer, agent or employee thereof, resulting from the wrongful or negligent act or omission of any such person whether occurring within or without the school premises, provided the officer, agent or employee was, at the time of the wrongful act or omission, acting within the scope of his employment or under direction of the board. . . .

"The specifications of the powers herein granted are not to be construed as exclusive, but the board shall also exercise all other powers that may be requisite or proper for the maintenance and the development of a public school system, not inconsistent with the provisions of this Code which apply to all school districts. As amended by act approved July 15, 1965."

[3] Section 34–18.1 provided: "The board of education shall insure any member of the board or any agent, employee, teacher, officer or member of the supervisory staff of the school district against financial loss and expense, including reasonable legal fees and costs arising out of any claim, demand, suit, or judgment by reason of alleged negligence or alleged wrongful act resulting in death or bodily injury to any person or accidental damage to or destruction of property, within or without the school premises, provided such board members, agent, employee, teacher, officer or member of the supervisory staff, at the time of the occurrence resulting in such death, bodily injury, or damage to or destruction of property was acting under the direction of the board within the course or scope of his duties. Added by act approved Aug. 27, 1963."

118

visions as are found in section 34–18, par 12, and section 34–18.1 of the School Code, supra, do not require, as does section 9–103 of the Tort Immunity Act, any waiver of defenses or immunity from suit. Furthermore 34–18, par 12, and 34–18.1 of the School Code are not limited to insurance against liability arising under any statutory provision or particular Act as the insurance authorized by section 9–103 is limited to insurance against liability imposed by the Tort Immunity Act. That Act deals only with immunities and does not purport to impose liability on School Districts where no liability otherwise exists. Section 2–111 of that Act specifically preserves defenses "heretofore existing and not described herein."

Plaintiff urges that since Molitor v. Kaneland Community Unit Dist. No. 302, 18 Ill2d 11, 163 NE2d 89 (1959) there is no longer any question but that school districts are responsible for the negligence of their agents and employees acting in the course of their employment. Plaintiff here charges negligence of defendant and defendant's employees, its coaching staff and other employees engaged in physical education matters, for permitting a player to participate in an athletic contest, when such employees knew or had reason to know that the temperament of such player was such that he was apt to become angry and commit an assault in the course of an athletic contest. This Court is aware of the general nature of high school basketball, as played between the various districts, a competitive and highly organized activity. Boards of Education have expert, well trained physical education instructors who have coaching experience and ability with reference to the training of students in these competitive endeavors. These employees associated with the basketball activity of the defendant, are required to decide the propriety of doing various acts such as selecting the participants and the manner in which the contests are conducted, within

119

the broad rules, guidelines and regulations prescribed by voluntary associations of which the various schools are members. In the exercise of their duties of selecting participants they exercise their own judgment and knowledge.

In Molitor, liability was predicated on a simple factual situation—negligence of the employee in driving a bus resulting in the injury of the student. The question of liability resulting from the discretionary exercise of judgment by professional school personnel relating to participation of a particular student was not involved. There our Supreme Court cited as persuasive authority, in determining whether school districts should retain their immunity from tort liability, an article by Dean Harno, "Tort Immunity of Municipal Corporations," 4 Ill Law Q 28, in which at page 30 the author stated, "The municipality should not be held responsible for errors of judgment of its officers." That principle had been recognized as applying to both a school board and a teacher in McCormick v. Burt, 95 Ill 262, long before Molitor; it has been referred to as the quasi-judicial or discretionary exception to liability which may be imposed upon employees of local public entities in the performance of their duties. In People ex rel. Munson v. Bartels, 138 Ill 322, 27 NE 1091, at page 328, our Supreme Court had stated:

> "When the officer has the authority to hear and determine . . . the propriety of doing an act, he is vested with judicial power. An officer will be regarded as clothed with judicial or quasi-judicial functions when the powers confided in him are so far discretionary that he can exercise or withhold them according to his own judgment as to what is necessary and proper."

In the recent case of Kelly v. Ogilvie, 64 Ill App2d 144, 212 NE2d 279, (1965), the Court pointed out that

the doctrine of quasi-judicial immunity rests on the principle that the public decision maker should be shielded from personal liability or other factors extraneous to a judgment based on his best perception of public need and that choices or decisions should be made without fear of personal liability or the second guessing of courts and juries. In that case the Sheriff together with his employees and the party committing the assault, were party defendants, while the public entity, the County, was not. Dismissal of the complaint for failure to state a cause of action was affirmed in the Appellate Court and in the Supreme Court at 35 Ill2d 297, 220 NE2d 174.

 The McCormick and Kelly decisions appropriately show that a public employee of a local public entity is not liable in tort for injuries arising out of the exercise of powers or authority vested in them in good faith if the powers are discretionary as opposed to ministerial in nature, except where such acts are performed wantonly or maliciously by the employee. In Woodman v. Litchfield Community School Dist. No. 12, supra, we pointed out that section 24–24 of the School Code, supra, protected a teacher from liability for mere negligence in supervision. Being insufficient as a matter of law against the employees of defendant, plaintiff's complaint does not state a cause of action against the defendant under a respondeat superior theory, because the employer cannot be held liable where the agent or employee is free of responsibility. Kessler v. Lepiane, 69 Ill App2d 1, 216 NE2d 241.

The thrust of plaintiff's contention is that the amended complaint states a cause of action because the defendant has seen fit to insure against liability. As was pointed out in Molitor, supra, the question of insurance in no way affects the liability, and that to determine liability by a determination whether a defendant is insured would allow the alleged wrongdoer to determine its own liabili-

121

ty. In Kelly v. Ogilvie, supra, the plaintiff argued that statutory indemnification and insurance protection for the defendant sheriff against liability for torts abrogated any vestige of the judicial act doctrine. The Appellate Court answered that contention by saying:

> "While the purpose of quasi-judicial immunity admittedly is to insulate decision making from extraneous factors, personal financial liability is only one of these factors. Equally important are public liability and an officer's legitimate fear of defending his many policy choses in Court. These are not rendered obsolete by indemnification in insurance and reason for quasi-judicial immunity remains." 64 Ill App2d 148, 212 NE2d 281.

From the foregoing we conclude that plaintiff's amended complaint does not state a cause of action and was properly dismissed. The judgment of the Circuit Court of Williamson County is affirmed.

Judgment affirmed.

GOLDENHERSH and MORAN, JJ., concur.