GERTRUDE KOH, Plaintiff-Appellant, v. THE VILLAGE GREENS OF
WOODRIDGE *et al.*, Defendants-Appellees.

Second District No. 2—85—0207

Opinion filed July 23, 1987.

Louis Hilfman, of Law Office of Louis Hilfman, Ltd., of Chicago (Robert. L. Fogel, of counsel), for appellant.

Steward H. Diamond, of Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago (Robert K. Bush, of counsel), for appellees.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Plaintiff, Gertrude Koh, appeals from the dismissal of her complaint against defendant village of Woodridge in which she sought recovery of damages for injuries sustained when struck by a golf ball while on a public golf course owned and operated by the village. The trial court determined that the village was immune from liability by virtue of section 3—108(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1981, ch. 85, par. 3—108(a)) in granting defendant's motion to dismiss counts I and II of the complaint. The court made the requisite findings under Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)) as to these counts, and count III, brought against defendant William Uhm, who was alleged to have struck the ball which injured plaintiff, remains pending in the trial court.

■ Plaintiff contends that section 3—108(a) of the Tort Immunity Act is not applicable to the allegations of the complaint under either count I charging negligence or count II charging wilful and wanton conduct on the part of the defendant village. Plaintiff also asserts that the immunities offered by section 3—108 of the Act were waived by this defendant by its participation in a joint self-insurance program under the Intergovernmental Risk Management Agency by virtue of section 9—103 of the Tort Immunity Act. Ill. Rev. Stat. 1981, ch. 85, par. 9—103.

In count I of the complaint plaintiff alleged she was a participant in a golf tournament on defendant's course at which there were large crowds of other participants and spectators; that defendant's employees managed the crowds so as to confine them to certain areas and directed the conduct of the tournament, acting as starters for the first tee; that plaintiff was a member of a foursome waiting by the first tee when she was struck by a golf ball hit by a participant in the tournament.

In paragraph 14 of count I plaintiff alleged the defendant village was negligent in that it:

"a. Owned[,] operated, managed, maintained, and controlled the aforesaid premises in such a manner as to be the proximate cause of injury to the plaintiff;

b. Failed to establish procedures to keep participants in a safe area during tournament play;

c. Permitted a larger capacity crowd of participants and spectators upon the VILLAGE GREENS GOLF COURSE than could be accommodated outside the area of play;

d. Directed and permitted participants and/or spectators to stand upon the VILLAGE GREENS GOLF COURSE during period of play where errant golf balls could reasonably strike such participant and/or spectator;

e. Started a participant in tournament play at a time when it was unsafe to do so."

The trial court granted defendant's motion to dismiss count I, finding that section 3—108 of the Tort Immunity Act immunized the village from liability for the alleged negligent conduct. Section 3—108(a) provides:

"[N]either a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property." Ill. Rev. Stat. 1981, ch. 85, par. 3—108(a).

Plaintiff agrees that a public entity and its employees have immu-

nity from liability for a failure to undertake supervision of activities on public property but contends that immunity does not extend to negligent conduct once supervision is undertaken. Plaintiff argues that she was injured as a consequence of defendant's conduct in managing the crowd at the first tee and placing plaintiff in a place of danger by its control of the golf tournament. Plaintiff asserts that the principle of liability relied upon is consistent with Illinois law holding that there may be liability for performing negligently a voluntarily undertaken task, citing *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 74, 199 N.E.2d 769, and *Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 126, 431 N.E.2d 1038.

The cases offered by plaintiff must be distinguished. While they do address the general proposition of law deemed applicable here by plaintiff, these cases do not address the immunities granted to public entities by the Tort Immunity Act.

The appellate court has considered the application of section 3—108(a) of the Tort Immunity Act where it was alleged that inadequate or negligent supervision was undertaken by a public entity on public property and rejected plaintiff's argument. In *Ramos v. City of Countryside* (1985), 137 Ill. App. 3d 1028, 485 N.E.2d 418, a child was injured while playing on municipal property under the auspices of a summer program sponsored by the city for which a fee was charged. The reviewing court concluded that section 3—108(a) of the Tort Immunity Act was applicable "to shield the city of Countryside from liability for an asserted failure to adequately supervise a summer recreation program held on public property." (137 Ill. App. 3d 1028, 1032, 485 N.E.2d 418.) Earlier, in *Yeater v. Decatur Park District* (1972), 8 Ill. App. 3d 957, 290 N.E.2d 282 (abstract), the court found that the voluntary undertaking of a duty to supervise by rules and regulations and posting of notices did not make the park district liable for deficiencies in that supervision and found it to be immune from liability pursuant to section 3—108(a) of the Act. See also *Woodman v. Litchfield Community School District No. 12* (1968), 102 Ill. App. 2d 330, 332-33, 242 N.E.2d 780; *Clay v. Chicago Board of Education* (1974), 22 Ill. App. 3d 437, 318 N.E.2d 153.

We conclude that the alleged negligent conduct of the defendant village in supervising and regulating the use of its public golf course is immune from the liability sought to be imposed under count I of plaintiff's complaint.

■ Plaintiff has also argued that the payment of a fee to the defendant village for use of the golf course removes that public property from the scope of the Tort Immunity Act, as the village was act-

ing in its proprietary, rather than governmental, capacity in the operation of the golf course, citing *O'Fallon Development Co. v. City of O'Fallon* (1976), 43 Ill. App. 3d 348, 356 N.E.2d 1293. A similar argument was rejected in *Ramos v. City of Countryside* (1985), 137 Ill. App. 3d 1028, 1034, 485 N.E.2d 418, in which the court considered a summer recreational program, for which a fee was charged, to be activity within the city's governmental capacity, rather than a business or proprietary capacity, and was subject to the general rule of nonliability of a municipality.

We consider that a municipal golf course, operated to provide recreation for the general public on village property, may not be excluded from the protections of the Tort Immunity Act for charging nominal fees for such use. There are no allegations in plaintiff's complaint which suggest the defendant village was operating its golf course in a business or proprietary capacity.

 Plaintiff next contends that the trial court erred in dismissing count II of her complaint, which alleged wilful and wanton conduct on the part of defendant village in conducting the golf tournament. She argues that section 3—108(a) of the Tort Immunity Act does not offer immunity to a public entity for its wilful and wanton conduct and that the trial court erred in doing so on that ground, citing *Edmonson v. Chicago Board of Education* (1978), 62 Ill. App. 3d 211, 379 N.E.2d 27, *appeal denied* (1978), 71 Ill. 2d 617.

Whether section 3—108(a) immunizes both ordinary negligence and wilful and wanton conduct of a public entity for failure to supervise activities on public property has not yet been resolved in Illinois (see *Ramos v. City of Countryside* (1985), 137 Ill. App. 3d 1028, 1033, 485 N.E.2d 418), and we may not do so here. In count II of her complaint plaintiff alleges the same general facts contained in count I, in which she sought recovery on a negligence theory, and charges the village with wilful and wanton conduct in that it "knew of the impending danger to players in the tournament by virtue of starting or permitting inexperienced and/or unskilled players to start when participants were crowded upon the course and failed to exercise ordinary care to prevent injury by starting play only when it was safe to do so."

A motion to dismiss admits all well-pleaded facts and inferences therefrom (*Griffis v. Board of Education* (1979), 72 Ill. App. 3d 784, 787, 391 N.E.2d 451), and a complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to relief. (*Gregor v. Kleiser* (1983), 111 Ill. App. 3d 333, 335,

443 N.E.2d 1162, *appeal denied* (1983), 93 Ill. 2d 542.) No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet. Ill. Rev. Stat. 1983, ch. 110, par. 2–612(b).

To sufficiently plead wilful and wanton conduct, a plaintiff must allege facts demonstrating a duty of defendant and a breach of that duty which proximately caused the plaintiff's injury. The mere conclusory allegation of wilful and wanton conduct is not sufficient. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 944, 453 N.E.2d 1133.) A wilful or wanton injury must have been intentional or the act must have been committed under circumstances which exhibit a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by ordinary care. *Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 429, 412 N.E.2d 447; *Coleman v. Hermann* (1983), 116 Ill. App. 3d 448, 457, 452 N.E.2d 620.

Plaintiff's characterization of the conduct of the village as wilful and wanton is not controlling, and the remaining allegations pertaining to the manner in which the tournament was started do not rise to the level of recklessness constituting wilful and wanton conduct. Nor has plaintiff alleged an intentional or reckless disregard of danger to the plaintiff. Since count II was insufficient to state a cause of action for wilful and wanton conduct, we conclude that it was properly dismissed on that ground.

Plaintiff's final contention is that the village waived its statutory immunity by virtue of its membership in the Intergovernmental Risk Management Agency (IRMA). Plaintiff contends that IRMA is an insurance company within the meaning of section 9–103 of the Tort Immunity Act, which provides that a public entity waives its statutory immunity by obtaining insurance. This argument was recently rejected by our supreme court in *Antiporek v. Village of Hillside* (1986), 114 Ill. 2d 246, holding that IRMA is a self-insurance pool, participation in which does not constitute waiver under section 9–103(c).

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

DUNN and REINHARD, JJ., concur.